IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| OKATIE HOTEL GROUP, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | C.A. No.: 2:04-2212-23 |
| v. ) | |
| ) | **ORDER** |
| AMERISURE INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the court upon Defendant Amerisure Insurance Company's ("Amerisure" or "Defendant") Motion, pursuant to Rules 12(c) and 56(c) of the Federal Rules of Civil Procedure, for Judgement on the Pleadings or in the alternative for Summary Judgment. Plaintiff Okatie Hotel Group, LLC ("Okatie" or "Plaintiff") has filed a Response, and Defendant has filed a Reply. For the reasons set forth herein, the court denies Defendant's Motion.

## BACKGROUND

Plaintiff Okatie contracted with the Devcon Group, Inc. ("Devcon") to construct the 66-room Fairfield Inn Marriott, Okatie Center in Beaufort, South Carolina. Devcon built the hotel between October 8, 1998, and December 3, 1999. Defendant Amerisure issued four commercial general liability ("CGL") policies of insurance coverage to Devcon covering the period between January 15, 1998, and January 15, 2002. During construction of the hotel, Devcon's subcontractors improperly performed their work, and as a result, the hotel suffered extensive moisture damage which Plaintiff alleges to be both an "occurrence" and an "accident" within the terms of the Amerisure policies.

In a suit between Okatie and Devcon, the Beaufort County Circuit Court rendered a final judgment against Devcon in the amount of $757,159.00. However, Amerisure refused to satisfy this judgement on behalf of Devcon, and therefore, on or about May 27, 2004, Okatie filed this action

for breach of contract against Amerisure in the Charleston County Court of Common Pleas.[1] Thereafter, Defendant removed this action to federal court based on diversity of citizenship[2] and filed an Answer denying Plaintiff's allegations and asserting that the CGL policies in question do not cover Plaintiff's claim. On September 24, 2004, Defendant filed a Motion for Judgment on the Pleadings or in the Alternative for Summary Judgment. The court stayed the motion pending the Supreme Court of South Carolina's decision in the case of *L-J, Inc. v. Bituminous Fire & Marine Ins. Co.*, 621 S.E.2d 33 (2005).[3]

## STANDARD OF REVIEW

In ruling on a Rule 12(c) motion for judgment on the pleadings, the court "must accept the nonmovant's allegations as true; viewing the facts in the light most favorable to the nonmoving party. Judgment on the pleadings should be granted if the movant is entitled to judgment as a matter of law." *Moore's Federal Practice,* § 12.38 (3d ed.) (internal quotations and citations omitted). The standard is almost identical to the standard employed in considering a Rule 12(b)(6) motion "with the key difference being that on a 12(c) motion, the court is to consider the answer as well as

---

[1] Plaintiff Okatie alleges that "Amerisure's policy language makes Plaintiff an intended 3rd party beneficiary of said policies and grants Plaintiff the contractual right to sue Amerisure for those damages . . . ." (Pl. Compl. at 3.)

[2] Plaintiff Okatie is a corporation organized and existing under the laws of South Carolina with its principal place of business in South Carolina. Devcon is not a party to this action; however it is a foreign corporation organized and existing under laws outside the state of South Carolina. Defendant Amerisure is a licensed foreign corporation organized and existing under laws outside the state of South Carolina with its principal place of business in Florida and is engaged in the insurance industry in South Carolina. *See* 28 U.S.C. § 1332.

[3] The Supreme Court of South Carolina originally reversed the South Carolina Court of Appeals in *L-J, Inc. v. Bituminous Fire & Marine Ins. Co*., 2004 WL 1775571 (Feb. 3, 2005). However, on rehearing, the Supreme Court of South Carolina withdrew and superceded its February 3, 2005, opinion with *L-J, Inc. v. Bituminous Fire & Marine Ins. Co.*, 621 S.E.2d 33 (2005).

the complaint." *Cont'l Cleaning Serv. v. United Parcel Serv., Inc.*, 1999 WL 1939249, *1 (M.D. N.C.1999) (internal quotations omitted); *see also Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002). The court also may consider documents attached to the pleadings. *See, e.g., N. Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452-53 (7th Cir. 1998) ("The pleadings include the complaint, the answer, and any written instruments attached as exhibits."), *citing* Fed.R.Civ.P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is part thereof for all purposes."). However, "[i]f, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . ." Fed. R. Civ. P. 12(c).

To grant a motion for summary judgment purusant to Rule 56, the court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "obligation of the nonmoving party is 'particularly strong when the

nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327.

## ANALYSIS

In the case *sub judice*, Defendant first argues that Florida law applies because a Florida agent issued the Amerisure policies to Devcon in Florida. Defendant further argues that under Florida law, the CGL policies do not cover Plaintiff's claims for property damage to the hotel. Second, Defendant argues on the other hand that even if South Carolina law applies, it is still entitled to summary judgment because faulty workmanship alone does not constitute an "occurrence."[4] Plaintiff claims that South Carolina law applies pursuant to S.C. Code Ann. § 38-61-10 and that "the underlying counterclaim clearly alleges that the result of the negligent construction caused an occurrence." (Pl.'s Mem. in Opp. at 4.) Therefore, the following issues are before the court: (1) whether Florida or South Carolina law applies; and (2) whether the damage to Plaintiff's hotel constituted an "occurrence" under the CGL policies issued by Defendant to Devcon.

### I.    Choice of Law

This court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. In a diversity case, a federal court must apply the choice of law rules of the state in which it is located. *See Klaxton Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *see also Heslin-Kim v. CIGNA Group Ins.*, 377

---

[4] In its Motion, Defendant states: "[U]nder Amerisure's reading of South Carolina law, the law of Florida is applicable to the interpretation of this policy. However, even if § 38-61-10 applies to this dispute, the result is the same because the effect of the application of either the law of Florida or the law of South Carolina is the same. Thus, the choice of law issue is not critical to this analysis." (Mot. at 4, n.1.)

F.Supp.2d 527, 530 (2005); *Spartan Iron & Metal Corp. v. Liberty Ins. Corp.*, 6 Fed. Appx. 176 (4th Cir. 2001); *Bowman v. The Cont'l Ins. Co.*, No. 99-2540, 2000 WL 1173992, at *3 (4th Cir. June 7, 2000).

South Carolina choice of law encompasses both the traditional *lex loci contractus* doctrine and S.C. Code Ann. § 38-61-10.  Historically, South Carolina courts followed the rule of *lex loci contractus* and applied the law of the state where the insurance contract was formed.  *See, e.g. Bowman*, 2000 WL 1173992, at *3 (holding that, under the traditional *lex loci contractus* rule in the absence of § 38-61-10, the contract was governed by the law of the place where it was formed, despite the insured's move into South Carolina where the action was brought) (citing *Jones v. Prudential Ins. Co.*, 210 S.C. 264, 264, 42 S.E.2d 331, 333 (1947)) ; *Unisun Ins. Co. v. Hertz Rental Corp.*, 312 S.C. 549, 551, 436 S.E.2d 182, 184 (S.C. Ct. App. 1993) (holding that a contract for insurance is governed by the law of the state where the application was made, the policy was delivered, and the contract was formed).  However, a statute enacted in South Carolina in 1947, S.C. Code Ann. § 38-61-10, modified the traditional rule of *lex loci contractus*.  This statute provides the following:

> All contracts of insurance on property, lives, or interests in this State are considered to be made in the state and all contracts of insurance the applications for which are taken within the State are considered to have been made within this State and are subject to the laws of this State.

S.C. Code Ann. § 38-61-10.  "Where this statute applies, it governs as South Carolina's rule of conflicts."  *Sangamo Weston Inc. v. Nat'l Surety Corp.*, 307 S.C. 143, 147, 414 S.E.2d 127, 130, (1992) (applying the statute to an insurance contract executed outside the state between non-resident parties because the insured property at issue was located within the state).

In *Sangamo*, the South Carolina Supreme Court considered the applicability of S.C. Code

5

Ann. § 38-61-10 to insurance policies covering a South Carolina manufacturing facility that had been executed outside of South Carolina by non-citizens of South Carolina. *Id*. In evaluating an insured's declaratory judgment action to determine the scope of insurance coverage, the court had to resolve "which state's law should be applied in interpreting these insurance contracts." *Id.* at 147, 414 S.E.2d at 129. Critical to this determination was the fact that the insured "property" at issue – Sangamo's manufacturing facility – was located in South Carolina. *Id.* at 147, 414 S.E.2d at 130. According to the court, "[a]lthough the parties are not residents of this state, both parties availed themselves of the law of South Carolina when they respectively provided or received insurance on interests located in this state." *Id.* at 149, 414 S.E.2d at 131. Thus, the court reasoned that pursuant to § 38-61-10, South Carolina law applied.

In light of *Sangamo*, therefore, the court must conduct a two-fold analysis to determine what law applies in this case. First, the court must consider the applicability of § 38-61-10.[5] Second, the court must address whether South Carolina has sufficient contacts creating a state interest in this dispute so that applying South Carolina's substantive law is consistent with the Full Faith and Credit Clause and the Due Process Clause. *Id*.

### A.     Applicability of S.C. Code Ann. § 38-61-10

To determine whether S.C. Code Ann. § 38-61-10 applies, this court first analyzes the expansive first prong of the *Sangamo* test. Pursuant to *Sangamo*, this court's inquiry does not look to where the contract was formed, but instead focuses on whether the subject of the insurance contract is located in South Carolina. *Id*. at 149, 414 S.E.2d at 130-31. "[U]nder the statute[,] it is

---

[5]  If § 38-61-10 does not apply to an insurance coverage dispute, the court must then determine choice of law through the doctrine of *lex loci contractus*. *See Sangamo*, 307 S.C. at 147, 414 S.E.2d at 130.

immaterial where the contract was entered into . . . [w]hat is solely relevant is where the property, lives, or interests insured are located." *Id*.; *see also* S.C. Code Ann. § 38-61-10 ("All contracts of insurance on property, lives, or interests in this State are considered to be made in the state . . . and are subject to the laws of this State.").

In the case *sub judice*, Plaintiff claims that S.C. Code Ann. § 38-61-10 does apply because the subject property is located in South Carolina. In contrast, Defendant argues that S.C. Code Ann. § 38-61-10 does not apply. Specifically, Defendant states: "the policy at issue is a liability policy, not a property policy. Thus, the statute does not apply by its own terms." (Def. Reply at 2, 3.) Additionally, Defendant claims that *Sangamo* "is fundamentally different than the instant case" because "[a]lthough the policy was a liability [policy,] it was clear from the facts of the case that the parties contemplated insuring the Sangamo *property* located in Pickens County." (Def. Reply at 3.) Defendants assert that in the present case, "Devcon did not seek to insure any specific property in South Carolina." (Def. Reply at 3.)

Ultimately, however, the court agrees with Plaintiff that S.C. Code Ann. § 38-61-10 applies. First, the plain language of § 38-61-10 contemplates a broad application of South Carolina law to insurance contracts with any significant connection to South Carolina, and the court is bound by the plain meaning of the statute's language. *See Hillman v. I.R.S.*, 263 F.3d 338, 342 (4th Cir. 2001) ("unless there is some ambiguity in the language of the statute, a court's analysis must end with the statute's plain language . . . ."). Moreover, *Sangamo* explicitly embraced a broad reading of § 38-61-10's applicability. *See Sangamo*, 414 S.E.2d at 130-131; *Cf. Boardman Petroleum, Inc. v. Federated Mutual Ins. Co.*, 135 F.3d 750, 754 (11th Cir. 1998) ("The South Carolina Supreme Court has emphasized that South Carolina's statutory choice-of-law provision applicable to contracts of

7

insurance on property, lives, and interests located within the state was intended to further South Carolina's interest in protecting the rights of its citizens."). Finally, and perhaps most importantly, neither the South Carolina Supreme Court in *Sangamo* nor the statute emphasize the location of property or lives upon inception of the insurance contract. Rather, both emphasize only the general location of property, lives, and interests within the state and that "it is immaterial where the contract was entered into." *Sangamo*, 414 S.E.2d at 130. Therefore, pursuant to both *Sangamo* and the statute's plain language, South Carolina's broad jurisdiction over an insurance contract is triggered by the location of the property, lives, and interests within the state, not by the entrance into an insurance contract. Accordingly, the court concludes that S.C. Code Ann. § 38-61-10 applies.

### B.    Constitutionality of Applying S.C. Code Ann. § 38-61-10

The court next considers whether applying the statute in the case *sub judice* is unconstitutional. *Sangamo*, 414 S.E.2d at 131. "[F]or a state's substantive law to be selected consistent with the Full Faith and Credit Clause and the Due Process Clause, the state must have a significant contact or significant aggregation of contacts, creating state interest, so that the choice of its law is neither arbitrary nor fundamentally unfair." *Id.* at 131( *citing Allstate Ins. Co. v. Hauge*, 449 U.S. 302 (1981)).

Defendant contends that S.C. Code Ann. § 38-61-10 does not apply because "Devcon simply purchased a liability policy in Florida from a Florida agent" and did not seek to insure any specific property in South Carolina. (Def. Reply at 3.) However, the court disagrees and ultimately concludes that in light of both *Sangamo* and South Carolina's statutory choice-of-law provision applicable to insurance contracts, Defendant's CGL policies insuring the construction of the 66-room hotel in Beaufort, South Carolina allow for the application of South Carolina law without

offending the Full Faith and Credit Clause or the Due Process Clause.

## II.    What Constitutes an Occurrence?

The second issue before the court is whether the damage to Plaintiff's hotel constituted an "occurrence" under the CGL policies[6] issued by Defendant to Devcon.  The Supreme Court of South Carolina recently held as a matter of first impression that property damage to the work product alone, caused by faulty workmanship, does not constitute an "occurrence."  *L-J, Inc.*, 366 S.C. 117, 621 S.E.2d 33 (2005).  In *L-J, Inc.*, an insurance company brought a declaratory judgment action seeking to determine whether a CGL policy it issued to L-J, Inc., the contractor, covered damage caused by faulty workmanship on a road project.  *Id.* at __, 621 S.E.2d at 34.  The court noted that South Carolina's "court of appeals has held that any liability that is incurred because of faulty workmanship is part of the insured's contractual liability, not an insurable event under a CGL policy."  *Id.* at __, 621 S.E.2d at 35 (citing *Isle of Palms Pest Control Co. v. Monticello Ins. Co.*, 319 S.C. 12, 16, 459 S.E.2d 318, 320 (S.C. Ct. App. 1994) and *C.D. Walters Constr. Co., Inc. v. Fireman's Ins. Co. of Newark*, 281 S.C. 593, 596-97, 316 S.E.2d 709, 711 (S.C. Ct. App. 1984)).

Ultimately, in *L-J, Inc.*, the court found that the negligent acts constituted faulty workmanship, which only damaged the roadway system.  *Id.* at __, 621 S.E.2d at 36.  "And because faulty workmanship is not something that is typically caused by an accident or by exposure to the same general harmful conditions, we hold that the damage in this case did not constitute an

---

[6] "A comprehensive general liability policy, such as the one at issue, provides coverage 'for all the risks of legal liability encountered by a business entity,' with coverage excluded for certain risks."  *Century Indem. Co. v. Golden Hills Builders, Inc.*, 348 S.C. 559, 565, 561 S.E.2d 355, 358 (2002) (quoting Rowland H. Long, L.L.M., *The Law of Liability Insurance*, § 3.06[1] (2001)).  In the present case, the insuring clause and the definition of "occurrence" is the same as that considered by the South Carolina Supreme Court in *L-J, Inc.  See* 366 S.C. 117, 621 S.E.2d 33 .

occurrence." *Id.*

Additionally, in *L-J, Inc.*, the court noted that it found the New Hampshire Supreme Court's analysis in *High Country Assocs. v. New Hampshire Ins. Co.*, 648 A.2d 474 (1994), helpful "in distinguishing a claim for faulty workmanship versus a claim for damage to the work product caused by the negligence of a third party." *Id.* In *High Country*, the New Hampshire Supreme Court held that where the complaint alleged negligent construction that resulted in property damage caused by continuous exposure to moisture and not merely negligent construction damaging only the work product, the CGL policy provided coverage. 648 A.2d at 477. The New Hampshire court stated:

> [T]he Association alleged actual damage to the buildings caused by exposure to water seeping into the walls that resulted from the negligent construction methods of High Country Associates. The damages claimed are for the water-damaged walls, not the diminution in value of cost of repairing work of inferior quality. Therefore, the property damage described in the amended writ, caused by continuous exposure to moisture through leaky walls, is not simply a claim for the contractor's defective work.

*Id.* Therefore, the court held that "the Association alleged negligent construction that resulted in an occurrence, rather then an occurrence of alleged negligent construction." *Id.* at 478.

In the case *sub judice*, Defendant claims that "[i]t is indisputable that the holding in the New Hampshire case is inconsistent with the holding of the South Carolina Supreme Court" because one case finds an occurrence while the other case does not. (Def. Reply at 7.) Although the two cases reach different conclusions, this court does not agree with Defendant's characterization. Moreover, this court does not agree with Defendant's contention that the only allegations made by Plaintiff arise from faulty workmanship alone and therefore do not constitute an occurrence.

As the court understands it, the distinction between *High Country* and *L-J, Inc.* results from the allegations made by plaintiffs. For instance, in *High Country*, the court strongly emphasized that

10

the allegation of continuous exposure to water, resulting in damaged walls, was the result of an occurrence rather than an allegation of faulty workmanship alone. In contrast, in *L-J, Inc.*, the South Carolina Supreme Court stated, "the complaint does not allege property damage beyond the improper performance of the task itself." 366 S.C. at __, 621 S.E.2d at 36. Thus, because plaintiffs in *L-J, Inc.* merely made allegations of faulty workmanship, the court found that the damage caused to the roadway system did not constitute an occurrence.

In the case *sub judice*, Plaintiff's Complaint states that the hotel "was continuously and repeatedly exposed to leaks and moisture infiltration resulting in an 'occurrence' within the terms of the insurance policy causing 'property damage.' " (Compl. ¶ 6.) The Complaint also refers to the previous suit between Devcon and Plaintiffs, stating that "[t]he negligence claim focused upon the serious damage to the building as a result of mold and moisture arising from the actions of Devcon's subcontractors." (Compl. ¶ 8.) In light of the aforementioned, the court concludes that contrary to the circumstances in *L-J, Inc.*, Plaintiffs in the present case have alleged property damage beyond damage to the work product and/or the improper performance of the task itself. Accordingly, the court holds that although damage to work product alone, caused by faulty workmanship, does not constitute an occurrence, the property damage to Plaintiff's hotel – caused by exposure to the harmful condition of leaks and moisture – constituted an occurrence under the CGL policies issued by Defendant to Devcon. Therefore, the court cannot conclude as a matter of law that Defendant is entitled to either judgment as a matter of law or summary judgment.

## CONCLUSION

It is, therefore, **ORDERED** for the foregoing reasons that Defendant's Motion is hereby

**DENIED**.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**January 13, 2006**